UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONNA WILSON,

                              Plaintiff,

v.

                                          Case # 17-CV-1003-FPG

                                          DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Donna Wilson brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 12. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On September 4, 2013, Wilson applied for DIB and protectively applied for SSI with the Social Security Administration ("SSA"). Tr.[1] 392-401, 405-08. She alleged disability since June 16, 2010 due to Chron's disease, cervical and lumbar herniated discs, fibromyalgia, depression, and anxiety. Tr. 421. On January 4, 2016, Wilson and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Sharon Seeley. Tr. 40-87. On April 22,

---

[1] "Tr." refers to the administrative record in this matter.

1

2016, the ALJ issued a decision finding that Wilson was not disabled within the meaning of the Act. Tr. 23-34. On August 7, 2017, the Appeals Council denied Wilson's request for review. Tr. 1-7. Thereafter, Wilson commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(4)(c). If the claimant does not have a severe impairment or combination of impairments that is severe, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Wilson's claim for benefits under the process described above. At step one, the ALJ found that Wilson had not engaged in substantial gainful activity since the alleged onset date. Tr. 25. At step two, the ALJ found that Wilson has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, fibromyalgia/chronic pain syndrome, and carpal tunnel syndrome. Tr. 25-27. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 27.

Next, the ALJ determined that Wilson retains the RFC to perform sedentary work[2] with additional limitations. Tr. 27-31. Specifically, the ALJ found that Wilson can lift, carry, push, and pull ten pounds occasionally and light items like folders and small tools frequently; can sit for six hours and stand and walk for two hours in an eight-hour workday, but must be able to alternate between sitting and standing at will; can frequently stoop, kneel, crouch, crawl, and reach overhead with her bilateral upper extremities (with no reaching limitations in other directions); can frequently climb ramps or stairs, but cannot climb ladders, ropes, or scaffolds; requires an environment without exposure to smoke, dust, fumes, or other pulmonary irritants; and will be off-task 40 minutes during an eight-hour workday in addition to customary breaks. Tr. 27.

At step four, the ALJ found that this RFC prevents Wilson from performing her past relevant work. Tr. 32. At step five, the ALJ relied on the VE's testimony and found that Wilson can adjust to other work that exists in significant numbers in the national economy given her RFC,

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

age, education, and work experience. Tr. 32-33. Specifically, the VE testified that Wilson could work as a telephone survey worker and telephone marketer. Tr. 33. Accordingly, the ALJ concluded that Wilson was not disabled under the Act. Tr. 33-34.

## II. Analysis

Wilson argues that remand is required because the ALJ improperly weighed the opinion of consultative examiner Hongbiao Liu, M.D. ECF No. 10-1 at 17-21; ECF No. 13. Specifically, Wilson asserts that Dr. Liu did not have the necessary information before him to render an opinion and that his opinion was stale by her hearing date. *Id.* The Court disagrees.

The SSA's regulations require the ALJ to "evaluate every medical opinion [she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998); 20 C.F.R. §§ 404.1527(c), 416.927(c). Unless a treating source's opinion is given controlling weight,[3] the ALJ must consider the following factors when she weighs a medical opinion: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The above regulations guide the ALJ's evaluation of a consultative examiner's opinion. The SSA arranges a consultative examination when the claimant's medical sources cannot or will not provide sufficient medical evidence about the claimant's impairments for the SSA to determine whether she is disabled. *See* 20 C.F.R. §§ 404.1517, 416.917. The SSA indicates that it will give

---

[3] There is no treating source opinion in this case.

the consultative examiner "any necessary background information" about the claimant's condition. *Id.*

Dr. Liu examined Wilson on October 23, 2013 and opined that she has mild limitations for prolonged walking, bending, kneeling, and overhead reaching and that she should avoid dust and other irritating factors to limit asthma attacks. Tr. 1108-1111. In accordance with the factors set forth above, the ALJ afforded "great weight" to Dr. Liu's opinion because it was based on his examination of Wilson. Tr. 31; *see* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) (the ALJ will give more weight to an opinion from a medical source who examined the claimant). The ALJ noted, however, that Dr. Liu "did not have access to the complete record available at the hearing level." Tr. 31. Thus, she indicated that she gave Wilson "the benefit of the doubt" and included RFC limitations greater than those opined by Dr. Liu. *Id.*

Wilson argues that the ALJ should not have given great weight to Dr. Liu's opinion because he did not have the MRIs of her lumbar and cervical spine before him when he rendered that opinion. Specifically, the record contains a lumbar spine MRI from October 3, 2013 and a cervical spine MRI from December 23, 2013, both of which reveal mild to moderate findings. Tr. 1132-33, 1562-64. Obviously, Dr. Liu did not have access to the December 23, 2013 cervical spine MRI because it was performed after his October 23, 2013 examination. There is no indication in Dr. Liu's report that he reviewed the October 3, 2013 lumbar spine MRI; however, there also is no indication that he did not review it. Although the regulations require the SSA to give the consultative examiner "any necessary background information" about the claimant's condition, 20 C.F.R. §§ 404.1517, 416.917, "this language does not amount to a requirement that every consulting physician be provided with all of a claimant's medical records and history (much less a requirement that the physician report that []he viewed every, or any, document in the record),"

6

*Johnson v. Colvin*, No. 13-CV-3745 KAM, 2015 WL 6738900, at *15 (E.D.N.Y. Nov. 4, 2015) (citation omitted), *aff'd sub nom.*, *Johnson v. Comm'r of Soc. Sec.*, 669 F. App'x 580 (2d Cir. 2016) (summary order).

A complete consultative examination report includes the claimant's primary complaints, a description of the history of those complaints, examination findings, laboratory or other test results, a diagnosis and prognosis, and a statement about what the claimant can do despite her impairments. 20 C.F.R. §§ 404.1519n(c)(1)-(6), 416.919n(c)(1)-(6) (effective Aug. 1, 1991 to Mar. 26, 2017). Dr. Liu's report complied with these requirements. Tr. 1108-1111.

Moreover, although the ALJ purported to give great weight to Dr. Liu's assessment, she explicitly recognized that the record was incomplete when Dr. Liu rendered his opinion. Thus, it appears that the ALJ evaluated Dr. Liu's opinion exactly how Wilson wanted her to—by analyzing it in light of the fact that it was based on an incomplete record. For that reason, the ALJ's RFC assessment is more restrictive than Dr. Liu's opinion, and Wilson does not assert that the RFC is improper or lacks additional limitations.

Wilson also asserts that Dr. Liu's opinion was "stale" because it was based on an incomplete medical record. ECF No. 10-1 at 19. It is true that an opinion based on an incomplete medical record "cannot constitute substantial evidence," *Weston v. Colvin*, No. 1:16-cv-00272(MAT), 2017 WL 4230502, at *4 (W.D.N.Y. Sept. 25, 2017) (citation omitted), but, as discussed above, the ALJ took this into account when she assessed Dr. Liu's opinion and considered a variety of other evidence when she made the RFC determination. The ALJ's decision acknowledges and discusses medical evidence that post-dates Dr. Liu's opinion, including opinions from a family nurse practitioner and a consultative psychiatrist. Tr. 29-31.

Wilson also argues that Dr. Liu's opinion was "stale" because he provided it 26 months before the hearing date. ECF No. 10-1 at 20. A gap of time does not automatically invalidate a medical source's opinion, but the opinion may be stale if the claimant's condition deteriorates during that time. *See, e.g.*, *Welsh v. Colvin*, No. 14-CV-6715P, 2016 WL 836081, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that an opinion rendered before the "significant deterioration" of the claimant's mental status could not "constitute substantial evidence supporting the ALJ's determination"); *Jones v. Comm'r of Soc. Sec.*, No. 10 CV 5831(RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"). But the record does not suggest, and Wilson does not argue, that her condition deteriorated after Dr. Liu rendered his opinion.

Accordingly, for all the reasons stated, the Court finds that the ALJ did not err and that she properly considered Dr. Liu's opinion.

## CONCLUSION

For the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 5, 2018
  Rochester, New York

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　HON. FRANK P. GERACI, JR.
　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　United States District Court